UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| SUSAN WEBB, | Civil No. 13-1947 (JRT/JJK) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER AFFIRMING ORDERS OF MAGISTRATE JUDGE** |
| ETHICON ENDO-SURGERY, INC., | |
| Defendant. | |

William L. Tilton, Michael J. Gross, George R. Dunn, and Grace Davies, **TILTON & DUNN, P.L.L.P.**, 101 Fifth Street East, Suite 2220, St. Paul, MN 55101, for plaintiff.

David R. Noteware, Janelle L. Davis, and Timothy E. Hudson, **THOMPSON & KNIGHT LLP**, One Arts Plaza, 1722 Routh Street, Suite 1500, Dallas, TX 75201, and Kim M. Schmid and Sheryl A. Bjork, **BOWMAN & BROOKE LLP**, 150 South Fifth Street, Suite 3000, Minneapolis, MN 55402, for defendant.

Plaintiff Susan Webb asserts claims for strict products liability, negligence with respect to manufacturing, and breach of warranty of merchantability claims against Ethicon Endo-Surgery, Inc. ("Ethicon"). Ethicon moves for a protective order and to quash notices, and Webb moves to compel discovery requests and for leave to propound additional discovery requests. On August 8, 2014, United States Magistrate Judge Jeanne J. Graham issued a discovery order ("the August 8 order") granting in part and denying in part both motions. Specifically, the Magistrate Judge granted Webb's request as to all of the staplers in the TX stapler line and ordered Ethicon to respond to the four additional document requests served by Webb. The Magistrate Judge also granted

Ethicon's request that the depositions of its corporate agents under Rule 30(b)(6) take place in Cincinnati, as opposed to St. Paul, which Webb requested. Ethicon subsequently requested that the Magistrate Judge clarify and reconsider the August 8 order as to Webb's four additional document requests. The Magistrate Judge issued a short order ("August 18 order") denying Ethicon's request.

This matter is now before the Court on both parties' objections to the August 8 order and Ethicon's objection to the August 18 order. Because the Court finds that the Magistrate Judge's orders were not clearly erroneous, the Court will overrule the parties' objections.

## BACKGROUND[1]

### I. FACTUAL HISTORY

On July 29, 2009, Webb underwent surgery at United Hospital in St. Paul, Minnesota, to have an esophageal tumor removed. (Aff. of Michael Gross ("Gross Aff."), Ex. 5 (Aff. of William M. Rupp. ("Rupp Aff.")) ¶¶ 3, 6-7, May 19, 2014, Docket No. 42; Compl. ¶¶ 5-6, July 19, 2013, Docket No. 1-1.) Dr. William Rupp was the lead surgeon during Webb's procedure. (Rupp Aff. ¶ 7.) To close the internal tissue incision after he removed the tumor, Dr. Rupp used a TX60B disposable surgical stapler, manufactured by Ethicon. (*Id.* ¶ 10; Gross Aff., Ex. 4.) Webb alleges that the stapler used in her surgery failed to properly fire, forcing Dr. Rupp to hand stitch a suture line to

---

[1] This Court's Order on Webb's motion for partial summary judgment provides a detailed recitation of the facts in this case. (Mem. Op. & Order Denying Pl.'s Mot. for Partial Summ. J. at 2-7, Dec. 17, 2014, Docket No. 247.) The Court will recount the facts here only briefly to provide context for the present objections.

close the incision.  (Compl. ¶¶ 9-12, 29-31; Rupp Aff. ¶¶ 22-29.)  Webb later developed a postoperative leak at the surgical site, leading to hospitalization, an additional surgery, and persistent and permanent health effects.  (Compl. ¶¶ 33-36; Rupp Aff. ¶¶ 29, 31.)

## II.     AUGUST 8 AND AUGUST 18 DISCOVERY ORDERS

The parties have now conducted extensive discovery in this case and seek clarification from the Court on several remaining discovery matters.  In particular, the parties dispute the appropriate number and scope of document requests and the location of the corporate depositions of Ethicon's officers and representatives.  The August 8 order and August 18 order address those disputes.  (Order ("August 8 Order"), Aug. 8, 2014, Docket No. 144; Order ("August 18 Order"), Aug. 18, 2014, Docket No. 150.)

### A.     Number and Scope of Document Requests

Webb served Ethicon with four document requests beyond the forty-request limit set by the Pretrial Scheduling Order in this case.  (Pl.'s Mem. in Supp. of Mot. to Compel Disc. Resps. & Grant Leave to Propound Additional Doc. Reqs. ("Pl.'s Mem. Supporting Mot. to Compel") at 33-38, July 10, 2014, Docket No. 118; Pretrial Scheduling Order at 1, Sept. 5, 2013, Docket No. 10.)  The additional requests are as follows:

**Document Request No. 40:**

    a.    All Premarket Notification Applications which mention any Ethicon Proximate Linear Staplers, pursuant to section 510(k) of the U.S. Food, Drug and Cosmetic Act and 21 C.F.R. §807.81, and all supplements or revisions to any related Premarket Notification;

    b.    All Device History Record documents relating to Ethicon Proximate Linear Staplers, as defined by 21 C.F.R. §803.3(i) and required by 21 C.F.R. §820.184(a) through (f);

    c.    All documents relating to the Quality System Record for Ethicon Proximate Linear Staplers as required by 21 C.F.R. §820.186;

    d.    Any and all documents related to any Complaint File as defined by 21 C.F.R. §820.3(b) and required by 21 C.F.R. §820.198(a) through (g), relating to:

        i.    Ethicon Proximate Linear Staplers;

        ii.    All other stapler devices, including any software and components thereof, that has been at any time identified as "Substantially Equivalent" to Ethicon Proximate Linear Staplers (including the TX series) in any Premarket Notification for this or any other stapler product, pursuant to section 510(k) of the U.S. Food, Drug, & Cosmetic Act;

    e.    All Quality Audit documents, as defined by 21 C.F.R. §820.3(t) and as required by 21 C.F.R. §820.22, relating to Ethicon Proximate Linear Staplers and other stapler products made in whole or part in Juarez, Mexico;

    f.    All Nonconformity documents relating to the Subject Ethicon Proximate Linear Staplers, as defined by 21 C.F.R. §820.3(q), including the procedures required by 21 C.F.R. §820.90;

    g.    Any and all documents related to all corrective and preventative actions (CAPA) as required by 21 C.F.R. §820.100, relating to the Ethicon Proximate Linear Staplers and to any other stapler product which relies on a Vision-type system for seeking to identify the presence of staples during production; and any component thereof, including, but not limited to Quality Improvement Requests, Continuous Improvement Requests, QIR logs, and non-conformance procedures and training; this includes minutes of any meetings of any committee of defendant related to CAPA matters related to defendant's facilities in Juarez, Mexico;

    h.    Any and all documents related to changes or modifications to the manufacture and production of Ethicon Proximate Linear Staplers and any component parts thereof, including, but not limited to, changes or

      deviations to specifications and guidelines, and all risk assessments, internal risk assessment memos, Top Level Design Control Procedures including risk analysis and human factors consideration, internal summary memos, correspondence, validation processes, testing, and approvals generated therefrom;

i.    Any Ethicon Policy and/or Procedure for handling reports of non-working products, including but not limited to any products approved by the FDA;

j.    Copies of all legal complaints and claim letters received by Ethicon (including Johnson and affiliated entities) wherein any allegation is made that an injury occurred due to an Ethicon surgical stapler or that a stapler was made with staples missing.

\* \* \*

**Document Request No. 41:** All documents in your possession which support any of your affirmative defenses.

\* \* \*

**Document Request No. 42:** All documents which support any analysis done by you as to the likely date or range of dates of the manufacture of the stapler device used in Susan Webb's [07/21/09] surgery.

\* \* \*

**Document Request No. 43:**

a.    All documents involving clinical studies performed on or with any TX product;

b.    Clinical studies performed on or with any other Ethicon surgical stapling product;

c.    All data available to Ethicon regarding effectiveness of surgical stapler use in alimentary tract or other thoracic surgery. This includes studies sponsored by Ethicon or any other entity, published and unpublished; it includes any data which may serve to compare stapled closures with hand-sewn closures of tissues; it includes animal and human studies.

(Pl.'s Mem. Supporting Mot. to Compel at 33-37.)  These additional requests were served without first seeking the Court's permission to exceed the limit set by the Pretrial Scheduling Order.  (August 8 Order at 9.)

In the August 8 order, the Magistrate Judge approved Webb's document requests 40 through 43, (*id.* at 9-10), but denied Webb's request to propound twenty additional document requests and limited the scope of the document production to:

> information related to the TX60B and to all of the staplers in the TX line, including design and development details of the staplers and their inspection systems, adverse incident reports, and FDA regulatory history. However, Defendant need not produce documents or answer interrogatories which pertain to surgical staplers outside of the TX line.

(*Id.* at 5, 10.)  The Magistrate Judge explained that this limitation in scope was due to the fact that "Plaintiff claims a manufacturing defect with respect to the TX60B stapler that was used in her surgery and the products, design, and inspection systems beyond the TX line appear significantly different from those in the TX line." (*Id.* at 4-5.)  To the extent Ethicon sought a scope narrower than the full TX line of surgical staplers, however, the Magistrate Judge denied Ethicon's request.

Both parties have objected to the August 8 order as to the scope of the document requests.  Ethicon seeks a much narrower scope, relating only to the TX60B stapler and limited to information accessible in active databases. (Mem. in Supp. of Ethicon's Mot. for Protective Order & to Quash Notices ("Ethicon's Mem. Supporting Mot. for Protective Order") at 10, 12-18, July 7, 2014, Docket No. 102; Ethicon's Objection to Magistrate's Aug. 8, 2014 & Aug. 18, 2014 Orders re Doc. Req. Nos. 40-43 ("Ethicon's Objection"), at 3-4, Aug. 22, 2014, Docket No. 154.)  Webb, conversely, seeks a broader

scope, with discovery of documents relating to Ethicon's entire line of linear staplers, rather than solely the TX line.  (Pl.'s Objection Under L.R. 72.2 to the Order Dated Aug. 8, 2014 ("Webb's Objection") at 4-10, Aug. 22, 2014, Docket No. 155.)

### B. Location of Corporate Depositions

The August 8 order also addresses the parties' dispute as to the location of the Ethicon corporate depositions.  Ethicon seeks to have the depositions conducted in Cincinnati, Ethicon's principal place of business and the city in which all of the deponents reside.  Webb's counsel requests that the depositions take place in St. Paul, Minnesota, where they and some of Ethicon's attorneys are located.  The Magistrate Judge granted Ethicon's request to hold the depositions in Cincinnati, concluding that it would be more efficient for Webb's attorneys to travel to Ohio than for each of the deponents to be flown to Minnesota.  (August 8 Order at 7-9.)

Ethicon informed Webb after the August 8 order that their witnesses would not be available on consecutive dates, requiring Webb's counsel to make multiple trips to Cincinnati to complete the depositions.  (Decl. of George Dunn ("Dunn Decl."), Ex. 2, Aug. 22, 2014, Docket No. 156.)  Accordingly, Webb has objected to this portion of the August 8 order.  (Webb's Objection at 10-12.)  Webb asserts that the Magistrate Judge's efficiency conclusion is undermined by this revelation by Ethicon and that the depositions can now more conveniently be conducted in Minnesota.

# ANALYSIS

## I. STANDARD OF REVIEW

A magistrate judge has broad discretion over matters of discovery. *Shukh v. Seagate Tech., LLC*, 295 F.R.D. 228, 238 (D. Minn. 2013). A district court's review of a magistrate judge's order on a nondispositive matter is "extremely deferential." *Roble v. Celestica Corp.*, 627 F. Supp. 2d 1008, 1014 (D. Minn. 2007); *see also United States v. Raddatz*, 447 U.S. 667, 673 (1980). The Court will reverse such an order only if it is clearly erroneous or contrary to law. *See* 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); D. Minn. LR 72.2(a)(3). For an order to be clearly erroneous, the district court must have a "definite and firm conviction that a mistake has been made." *Lisdahl v. Mayo Found.*, 633 F.3d 712, 717 (8th Cir. 2011) (quoting *Anderson v. Bessemer City*, 470 U.S. 564, 573 (1985)).

## II. NUMBER AND SCOPE OF DOCUMENT REQUESTS

Both parties object to the Magistrate Judge's order as to the number and scope of Webb's document requests. Ethicon requests a narrower scope of discovery than that set by the August 8 order and confirmed by the August 18 order. More specifically, Ethicon asks the Court to clarify whether the August 8 and August 18 orders are to be interpreted as preemptively striking Ethicon's anticipated objection to the scope and proportionality of document request number 40. Webb, on the other hand, requests a broader scope than that identified by the Magistrate Judge. Having thoroughly reviewed the Magistrate Judge's orders and the parties' arguments on this issue, the Court concludes that the

Magistrate Judge's order is neither clearly erroneous nor contrary to law. The Court further concludes that the Magistrate Judge's orders contemplate a proportionality objection by Ethicon and overrule such an objection. The Court finds that this is not contrary to law.

The Magistrate Judge appropriately began her analysis with Federal Rule of Civil Procedure 26(b), noting that it is a broad rule allowing parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense," Fed. R. Civ. P. 26(b)(1), but that "the court must limit the frequency or extent of discovery . . . [if] the burden or expense of the proposed discovery outweighs its likely benefit," Fed. R. Civ. P. 26(b)(2)(C)(iii). The Magistrate Judge considered in detail the declaration submitted by Michael Cronin, the Project Director for Ethicon's Research and Development Department, which argued that the likely benefit of discovery into linear staplers beyond the TX line was substantially limited. (Decl. of Michael D. Cronin ("Cronin Decl."), July 17, 2014, Docket No. 133.) Cronin's declaration, which includes descriptions and photographs of some of the other types of staplers manufactured by Ethicon and their respective vision inspection systems, highlights the differences between them. (*Id.*) Cronin explains that "[p]roducts beyond the TX line of staplers have significant differences in their design and manufacturing processes. Non-TX staplers look different, serve different functions, and have different mechanical configurations and components including different staple shapes and sizes as well as number of staples." (*Id.* ¶ 6.) The Magistrate Judge concluded that a key issue in this case is how the stapler used in Webb's surgery compares to similar staplers that may share a record of analogous

accidents or injuries, and these stark differences are highly relevant to that issue. (August 8 Order at 4-5.) Staplers with a very different design or visual inspection system offer little or no value to Webb in this respect, but the cost to Ethicon of producing that information would be quite high. Consequently, the Magistrate Judge declined to order such expansive discovery into Ethicon staplers beyond the TX product line of which Webb's surgical stapler was a part.

The Magistrate Judge demonstrated further cognizance of the importance of balancing the relative values and interests of the parties by not severely restricting the scope of discovery in the manner requested by Ethicon. Ethicon argued before the Magistrate Judge that the proper scope of document production in this case would not permit discovery into "types of defects [other than a manufacturing defect], differing defect theories, or dissimilar product failures," in the TX60B or any other Ethicon product. (Ethicon's Mem. Supporting Mot. for Protective Order at 18.) Instead of so tightly restricting the scope of discovery, the Magistrate Judge offered the parties a middle ground, concluding that Webb has made a "threshold showing of relevance" as to other staplers in the TX line. (August 8 Order at 4 (quoting *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992); *id.* at 5, 12.) To strike this balance, the Magistrate Judge ordered Ethicon's compliance with Webb's requests for production as to other staplers in the TX line, which appear to have more features in common and would more likely be affected if there were a flaw in the detection of staples in the TX60B detection system.

Ethicon contended before the Magistrate Judge that compliance with Webb's additional requests would transform "the complexion of [this] case through unbridled, costly, and often never-ending discovery into tangentially relevant matters." (Ethicon's Mem. Supporting Mot. for Protective Order at 12.) The memorandum of law Ethicon presented to the Magistrate Judge extensively described the disproportionate scope of Webb's document requests, identifying multiple categories Ethicon argued were "irrelevant and overly broad." (*Id.* at 11-19 (seeking a protective order from the court and describing document requests 40 through 43 as "irrelevant," "overly broad," "beyond any reasonable scope of discovery," "unreasonable," "immeasurably complicat[ing] this case, driv[ing] up discovery costs for both parties, and significantly delay[ing] trial and ultimately the resolution of this case," and "far exceed[ing] any reasonable scope of discovery in this case").)

Along with its objection to the August 8 order, Ethicon now offers a declaration from Ethicon's Risk Manager explaining that the cost of producing all relevant documents for requests numbers 40-43 for all TX line staplers would be disproportionately high, given that Ethicon has produced the line for eighteen years and stores records for the line in multiple databases. (Decl. of Kristi S. Geier ("Geier Decl.") ¶¶ 3-4, 8, Aug. 25, 2014, Docket No. 157.) Ethicon contends that such a burden is disproportionate to the recovery Webb seeks in this case, and that the Magistrate Judge's discovery scope is therefore contrary to the proportionality concept encompassed by Rule 26. (Ethicon's Objection at 5-6.) Accordingly, Ethicon asks the Court to clarify whether it will treat the Magistrate Judge's orders as preemptively overruling any

objection Ethicon might raise as to the proportionality of document request number 40. (*Id.* at 1-2, 6.)

Ethicon cites three cases from the District of Minnesota in support of its argument that a proportionality principle entitles Ethicon to a narrower scope of discovery. *See Best Buy Stores, L.P. v. Developers Diversified Realty Corp.*, 247 F.R.D. 567 (D. Minn. 2007); *Ewald v. Royal Norwegian Embassy*, No. 11-2116, 2013 WL 6094600 (D. Minn. Nov. 20, 2013); *Lindsay v. Clear Wireless LLC*, No. 13-834, 2014 WL 813875 (D. Minn. Mar. 3, 2014). In each of those cases, though, the court applied precisely the same standard as the Magistrate Judge applied in this case. *See Developers Diversified Realty Corp.*, 247 F.R.D. at 569 (explaining that Rule 26(b) allows discovery into relevant and nonprivileged material, but that such material may be limited in scope if not reasonably accessible); *Ewald*, 2013 WL 6094600 at *7-*10 (quoting Rule 26(b) and describing the proportionality concept in the rule as favoring discovery unless a party can show that the burden of complying with the discovery request outweighs the likely benefit); *Lindsay*, 2014 WL 813875 at *2 (citing Federal Rule of Civil Procedure 26(b)(2)(C)(iii) for the conclusion that Rule 26 embodies an element of proportionality). The Magistrate Judge quoted the same portions of Rule 26(b) as did the courts in the cases Ethicon cites. Indeed, the Magistrate Judge appears to have placed significant weight on the concept of proportionality in narrowing the discovery scope from Webb's request of all Ethicon Proximate liner staplers to exclusively the TX line.

Ethicon asserts that proportionality requires an even further reduction in light of the expense of searching multiple databases, including those that are archived or no

longer active. (Geier Decl. ¶¶ 4-8.) Ethicon estimates that it would cost $62,400 to comply with the Magistrate Judge's order, (*id.* ¶ 8), while Webb has only asserted that her damages are "well in excess of $50,000," (Compl. at 9.) The Court does not find that this alters or makes contrary to law the Magistrate Judge's conclusion that the burden and expense does not outweigh the likely benefit of producing the requested documents. "[T]he presumption is that the responding party must bear the expense of complying with discovery requests." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 358 (1978). "The fact that a corporation has an unwieldy record keeping system which requires it to incur heavy expenditures of time and effort to produce requested documents is an insufficient reason to prevent disclosure of otherwise discoverable information." *Wagner v. Dryvit Sys., Inc.*, 208 F.R.D. 606, 611 (D. Neb. 2001); *Handi-Craft Co. v. Action Trading, S.A.*, No. 02-cv-1731, 2003 WL 26098543, at *11 (E.D. Mo. Nov. 25, 2003).

The Court finds that the Magistrate Judge appropriately took expense, burden, and likely benefit into account when considering the scope of the August 8 discovery order.[2] The Court thus concludes that the Magistrate Judge's order considered proportionality as

---

[2] Ethicon argues that it would violate due process for the Magistrate Judge to preemptively strike a proportionality objection that Ethicon has not yet formally made, because it would deprive Ethicon of "the opportunity to be heard on burdensomeness and relevance." (Ethicon's Objection at 4 (citing *Goldberg v. Kelly*, 397 U.S. 254, 267 (1970)).) The Court finds that Ethicon has received due process as to their proportionality argument, having extensively argued in their motion for a protective order – and again in their letter to the Magistrate Judge requesting clarification of the August 18 order – the appropriate scope of discovery in comparison to the burden on Ethicon and the magnitude of Webb's claims. (Ethicon's Mem. Supporting Mot. for Protective Order at 12-18; Letter Requesting Permission to File a Mot. to Reconsider and for Clarification, Aug. 14, 2014, Docket No. 149.) The Court concludes that the Magistrate Judge considered these arguments and determined that the balance of interests in this case supports discovery into the TX line of staplers. The Court finds that this was not clearly erroneous.

part of the August 8 order and that a proportionality objection by Ethicon was contemplated by the August 18 order when it states that "Defendant's objections to information sought in document request numbers 40 through 43 that falls within the scope of discovery are overruled." (August 18 Order at 1.) Thus, the Court will overrule both Webb's objection and Ethicon's objection as to the number and scope of the document requests in this case and will adopt the Magistrate Judge's order requiring Ethicon to comply with document request numbers 40 through 43, to the extent of the discovery scope outlined by the Magistrate Judge in the August 8 order.

### III.   CORPORATE DEPOSITION LOCATION

Webb also objects to the Magistrate Judge's order that the Ethicon corporate depositions take place in Cincinnati as opposed to St. Paul. The Court concludes that the Magistrate Judge's location determination was not contrary to law.

"[T]he general rule requires a Rule 30(b)(6) deposition to be taken at the corporation's principal place of business." *Dwelly v. Yamaha Motor Corp.*, 214 F.R.D. 537, 541 (D. Minn. 2003); *see also Magnus Elecs., Inc. v. Masco Corp. of Ind.*, 871 F.2d 626, 630 (7th Cir. 1989) (citing *Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979)). As the Magistrate Judge correctly noted, there is a "'presumption' that the deposition of a corporation should be taken at its principal place of business." *New Medium Techs. LLC v. Barco N.V.*, 242 F.R.D. 460, 466 (N.D. Ill. 2007). Courts have discretion to select another location, though, if one party shows that there are "'peculiar' circumstances favoring depositions at a different location," such as "cost, convenience, and litigation

efficiency." *Six W. Retail Acquisition, Inc. v. Sony Theatre Mgmt. Corp.*, 203 F.R.D. 98, 107 (S.D.N.Y. 2001) (internal quotation marks omitted).

Here, those factors do not weigh in favor of exercising the Court's authority to move the location of the corporate depositions. Both parties agree that Ohio is Ethicon's principal place of business, and the witnesses Ethicon has offered to represent the corporation at the depositions all reside and work in Cincinnati. Webb stresses the Magistrate Judge's language that the depositions should remain in Cincinnati because "[i]t is most efficient for Plaintiff's attorneys to go to Cincinnati to depose Defendant's Rule 30(b)(6) designees, **all in one trip on consecutive days**, rather than have multiple Rule 30(b)(6) witnesses fly up to Minnesota." (August 8 Order at 8-9 (emphasis added).) But there is no indication that the Magistrate Judge viewed the number of Webb's counsel's trips to Cincinnati as dispositive of the location in this case. As the Magistrate Judge indicated, efficiency and cost are factors to be considered when determining whether a court ought to override the presumption that 30(b)(6) depositions should take place at the corporation's principal place of business.

The general rule remains that the corporation's principal place of business – in this case, Cincinnati – is the appropriate location for the corporate depositions, and the Court concludes that the Magistrate Judge's decision not to exercise discretionary authority to the contrary was not clearly erroneous. Thus, the Court will overrule Webb's objection as to the location of the 30(b)(6) depositions.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Ethicon's objection [Docket No. 154] and Webb's objection [Docket No. 155] are **OVERRULED**.  The Magistrate Judge's August 8, 2014 and August 18, 2014 Orders [Docket Nos. 144, 150] are **AFFIRMED**.

DATED:  January 26, 2015　　　　　　　　　　　　　　　_____s/ John R. Tunheim_____
at Minneapolis, Minnesota.　　　　　　　　　　　　　　　　JOHN R. TUNHEIM
　　　　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge